No. 25,982.

ALLEN SWANSON, by and through his Guardian, J. D. WATERS, *Appellee,* v. AMALIA CARLSON, MAX LITZEN, NELS CARLSON, Guardian of the Person and Estate of INGRID SWANSON, and CHARLES CARLSON, *Appellants.*

### SYLLABUS BY THE COURT.

1. INFANTS—*Acquisition of Real Estate—Gift of Certificate of Sale Under Foreclosure.* A father and mother of a minor son may give such minor real estate and invest him with its ownership by the transfer of a certificate of sale issued by the sheriff after a sale of the property under a judgment of foreclosure.

2. MORTGAGES—*Foreclosure—Certificate of Sale—Transfer in Blank.* The fact that the blank in the assignment of the certificate for the name of the assignee was not filled out did not operate to nullify the transfer made in performance of an agreement to transfer the property to the minor, accompanied as it was by a delivery of the certificate.

3. SAME—*Sheriff's Deed—Procurement by Fraud—Title and Ownership.* The party who surreptitiously obtained the certificate so assigned and whose name was fraudulently inserted in the certificate as assignee, and who afterwards procured the sheriff to execute a deed to her on the theory that she was the real owner and holder of the certificate, when in fact she was not, gained no title to or ownership in the property through the void deed.

4. SAME. The fact that she appeared before the court in the foreclosure proceeding and secured an order directing the sheriff to execute a deed to the property to her as the owner and holder of the certificate so fraudulently procured, did not give her a right to the property nor affect the ownership of the minor plaintiff who was not a party to the proceeding.

5. DESCENT AND DISTRIBUTION—*Property Subject.* The property having been legally transferred to plaintiff by the agreement and transfer of his father and mother, no interest was left in it to descend or pass to the heirs of the father upon his death.

6. DEED — *Transfer of Property — Evidence — Sufficiency.* The evidence examined and held to be sufficient to support the finding of the jury that there was an actual transfer of the property to plaintiff, and also the finding that the certificate was fraudulently obtained by defendant.

Appeal from Wyandotte district court, division No. 2; FRANK D. HUTCHINGS, judge. Opinion filed November 7, 1925. Affirmed.

*James F. Getty, George W. Littick, J. H. Olson,* all of Kansas City, and *Aaron Myers,* of Kansas City, Mo., for the appellants; *Thomas A. Pollock,* of Kansas City, of counsel.

1. Gifts, 28 C. J. § 26; Infants, 31 C. J. § 78.   2-4. Mortgages, 27 Cyc. pp. 1284, 1290.   5. Descent and Distribution, 18 C. J. § 12.   6. Deeds, 18 C. J. § 554.

*Fred Robertson, R. J. Higgins, E. M. Boddington,* all of Kansas City, and
*J. M. Fisher,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: · Allen Swanson, through his guardian brought
this action against Amalia Carlson and others to recover a tract of
ground in Kansas City. He recovered and defendants appeal.

The property was purchased by Mary Reisacker, the plaintiff's
mother, on May 10, 1910, for $4,300, subject to a mortgage to one
Connell, of $1,100. She paid therefor $2,000 in cash and gave the
grantor, Kingscott, a second mortgage for $1,300, which she paid
about a year after the purchase. A deed purporting to have been
executed by Mary Reisacker to Axel Swanson, bearing date June
4, 1910, was placed on record April 10, 1911. Mrs. Reisacker testi-
fied that the instrument was never signed by her, and that she re-
ceived no consideration for it other than a mortgage for $1,000 on
the property which Swanson gave her on July 7, 1921, after she
had learned of the existence of the deed. Axel Swanson was the
husband of Ingrid Swanson, and it appears that she was adjudged
insane in October, 1905, and was placed in the asylum for the
insane at Osawatomie, Kan., where she remained for about three
years. She was then taken to a sister's home in Denver, Colo.,
where she was cared for, but later grew worse and was placed in
the hospital for the insane at Pueblo, Colo., and was in that insti-
tution when the trial was had. Mrs. Reisacker testified that on
representations of Swanson that his wife was dead, she was married
to him in St. Louis, Mo., on July 27, 1907, and that they had lived
together as man and wife until the death of Swanson on June 30,
1919. In that relation two children were born to them, one of whom
died, and the other is the plaintiff, Allen Swanson, who is about
sixteen years of age.

A foreclosure proceeding was brought on the Connell mortgage
for $1,100, and on March 1, 1915, a judgment of foreclosure was
rendered. In pursuance of the judgment and at a sale attended
by Swanson, the sheriff sold the property to Charles Carlson for
$1,875.62. The sale was confirmed on February 17, 1916, and the
sheriff was ordered to deliver to the purchaser a certificate of pur-
chase, and after the expiration of eighteen months, if the property

was not redeemed, to execute and deliver a deed to the holder of the certificate. Amalia Carlson appeared in court on September 17, 1919, alleging that the certificate had been duly assigned to her and that she was the owner and holder thereof, asking the court that the sheriff be ordered to execute and deliver a deed of the property to her, and on that day such an order was made.

On the part of Allen Swanson, it is claimed that a few days before the foreclosure sale an agreement was made between Axel Swanson and Mrs. Reisacker, that if he would bid in the property for their son Allen, at the foreclosure sale, she would release her interest in it and cancel the $1,000 mortgage thereon, which he had given to her. There was testimony that Swanson obtained the money necessary to do so and procured one Charles Carlson to make the bid for him, furnishing Carlson the money to pay the sale price, and that afterwards Carlson assigned the certificate in blank and delivered it to Swanson, who brought it home and delivered it to Mrs. Reisacker, saying, "Here is a deed from the court to the boy. This blank here you can add his name and put it on record," and that thereby he carried out and completed the agreement between the father and mother of Allen Swanson, the mother having previously released the $1,000 mortgage on the property.

There was testimony that the mother placed and kept the certificate in a secret drawer for some time, but in 1916, before going with Axel Swanson to Florida to reside, she took the certificate to the Interstate Bank in Kansas City and delivered it to the cashier for safe-keeping, and at that time the blank in the assignment of the certificate had not been filled in. Later, and on February 2, 1918, the certificate was sent by the bank to Mrs. Reisacker and Swanson in Florida, and at that time the blank in the assignment on the certificate was yet unfilled. In January, 1919, Mrs. Reisacker received a telegram to the effect that her sister in Kansas City was at the point of death and asking her to come as soon as possible. She came back to Kansas City and remained with her sister until her death the following March. She left the certificate and other papers in a drawer in Florida, and on receiving notice that Axel Swanson had died suddenly in Florida, on June 30, 1919, she returned there and then found that her effects had been rifled and the certificate and other papers had been taken. The certificate was not seen afterwards by her until it was produced by Amalia Carlson, whose name had been placed in the blank as assignee.

On behalf of Amalia Carlson it was alleged and she testified that she bought the property from Charles Carlson, the bidder at the sale, and paid him the amount which he had bid, namely, $1,875.62. Whereupon he assigned the certificate to her. Her testimony was to the effect that in a few days after the sale in 1916, she made the purchase and her name was then inserted in the blank assignment, and that she had kept possession of the certificate continuously afterwards until the deed was executed to her by the sheriff.

On behalf of Ingrid Swanson, the insane wife of Axel Swanson, there was denial that any agreement had been made between Swanson and Mrs. Reisacker, for the transfer of the property to their son Allen, and it was alleged that the plaintiff was not the son of Swanson, and never had been duly recognized as his son; that Swanson had procured Carlson to buy the property for him, and that he owned and controlled the certificate and the property until his death. It was claimed that the certificate had been fraudulently procured and assigned to Amalia Carlson, that the attempted transfer of the certificate did not affect the rights of the wife, Ingrid Swanson, and that she is the sole heir of Swanson and is entitled to the property.

After stating the contentions of the several parties, the court, among other things, instructed the jury as follows:

"Now if the jury find from the evidence that the plaintiff is the son of Axel Swanson and Mary Reisacker, that plaintiff's mother had an interest in the property in question, and that it was agreed between his father and mother that Mary Reisacker should release or waive her interest therein if his father Axel Swanson would purchase said property under said foreclosure sale for their son, and that in pursuance of said agreement said Axel Swanson paid the purchase money and caused said property to be bid in at said sale in the name of Charles Carlson, and that a certificate of purchase was issued to said Charles Carlson, and that Axel Swanson caused said Charles Carlson to execute an assignment and transfer of said certificate with the name of the assignee not filled in and delivered said certificate of purchase to Mary Reisacker for her son, with the understanding, agreement and intention that plaintiff's name was to be inserted in said assignment as assignee, and that subsequently said certificate with the name of the assignee left in blank but with the intention and purpose of having plaintiff's name inserted therein, was taken from Mary Reisacker's papers without her knowledge and consent and against her will, and that the name of the defendant Amalia Carlson was thereafter inserted in said certificate of purchase without the consent or knowledge of plaintiff's mother; then you are instructed that the deed issued to defendant Amalia Carlson on and in pursuance of said certificate of purchase is of no validity, null and void, and the plaintiff would be entitled to recover in this action and your verdict should be for the plaintiff."

As to the claim of Ingrid Swanson, there was an instruction that:

"The defendant Ingrid Swanson is admitted in this case to be the wife of the deceased, Axel Swanson, and such wife would be entitled to one-half of all property of which he was seized at the time of his death; and if the jury in this case find from the evidence that Axel Swanson had Charles Carlson buy the property in .question at the foreclosure sale with money furnished to him by Axel Swanson, and that Charles Carlson received from the sheriff of Wyandotte county a certificate of purchase, executed an assignment with the name of the assignee left blank on the back thereof, and delivered the same to Axel Swanson, and that there was no understanding or agreement as hereinbefore described between the said Axel Swanson and Mary Reisacker that said property was to be plaintiff's and his name inserted in said assignment of the certificate of purchase, as assignee, and that the certificate of purchase was in the possession of Axel Swanson during his lifetime, but was taken from his effects after his death and the name of Amalia Carlson inserted therein, and said certificate of purchase was delivered to the sheriff of Wyandotte county and a sheriff's deed thereupon issued to Amalia Carlson, under which she went into possession of the premises, and you further find from the evidence that the plaintiff is the son of Axel Swanson and Mary Reisacker, and that Axel Swanson in his lifetime generally and notoriously or in writing recognized the plaintiff as his son, then in that case you are instructed that said sheriff's deed is void and of no force and effect, and that the plaintiff and the defendant Ingrid Swanson would be entitled to a verdict against the defendant Amalia Carlson.

"The plaintiff, if you find from the evidence that he was the son of Axel Swanson and Mary Reisacker, and that Axel Swanson during his lifetime generally and notoriously, or else in writing, recognized him as his son, would inherit one-half of the property of which Axel Swanson died seized, and in this case would be entitled to one-half of the real estate in question; but if you find from the evidence that said plaintiff was not the son of Axel Swanson and Mary Reisacker, or if he was their son, that he was not generally, notoriously or else in writing recognized by Axel Swanson in his lifetime as his son, he would not inherit from his father; and Ingrid Swanson would be entitled to all of the property involved in this action, if you shall find from the evidence that the deed issued to the defendant Amalia Carlson is null and void as explained in these instructions, and your verdict should be for Ingrid Swanson and against the plaintiff and the defendant Amalia Carlson."

As to Amalia Carlson's claim the jury were instructed:

"But if the jury find from the evidence that said certificate of purchase was issued to Charles Carlson, and that he paid the purchase price of the property described therein with his own funds, and that he subsequently sold and assigned said certificate of purchase to the defendant Amalia Carlson and transferred and delivered said certificate to her for a valuable consideration to him paid, within a short time after it was issued and that she had the actual possession thereof until she delivered it to the sheriff for the purpose of getting a deed, then. you are instructed that the plaintiff or the defendant Ingrid

Swanson would not be entitled to recover and your verdict should be for the defendant, Amalia Carlson."

Special questions were submitted by the plaintiff, which were answered as follows:

"1. Did Axel Swanson have Charles Carlson buy the property in at sheriff's sale and assign it in blank for the use and benefit of Allen Swanson or his assigns? Answer: Yes.

"2. Did Charles Carlson execute the assignment in blank on the back of the certificate of purchase? Answer: Yes.

"3. Did Mary Reisacker and Axel Swanson have possession of the certificate of purchase and the assignment written thereon until about the time of Swanson's death in 1919? Answer: Yes.

"4. Was Amalia Carlson's name fraudulently inserted in the blank space of the assignment subsequent to the death of Axel Swanson? Answer: Yes.

"5. Did Axel Swanson openly and notoriously recognize Allen Swanson as his son during his lifetime? Answer: Yes.

"6. Did Axel Swanson deliver the certificate so that with the assignment thereon in blank to Mary Reisacker during his lifetime? Answer: Yes.

"7. Did Axel Swanson deliver the certificate so that Allen Swanson's name could be inserted in a blank on the assignment? Answer: Yes.

"8. Does Amalia Carlson wrongfully hold possession to the real estate in question? Answer: Yes."

Those submitted on the request of the defendant follow:

"1. Did Amalia Carlson pay Charles Carlson, $1,875.62, on or about April 1st, 1916, in consideration of the assignment of a certificate of purchase of certain real estate described in plaintiff's petition? Answer: No.

"2. Was the certificate of purchase introduced in evidence in his case issued to Charles Carlson by the sheriff of Wyandotte county as a result of his purchase of the land in question? Answer: Yes.

"3. Has Amalia Carlson paid the taxes on said property for the years 1916, 1917, 1918, 1919, 1920 and the first one-half of 1921? Answer: Yes.

"4. Has Swanson or any one on his behalf or on behalf of the minor reimbursed Amalia Carlson said taxes, or offered to do so? Answer: No.

"5. Did the curator or the sheriff take possession of Swanson's effects after Swanson's death and before one of the Thompsons arrived at that place? Answer: We do not know."

The general verdict was in favor of the plaintiff, finding that plaintiff was the owner and entitled to the immediate possession of the property, and judgment was accordingly entered.

Amalia Carlson contends that neither the facts stated in the petition nor those found warranted the judgment that was rendered. So far as she is concerned the findings of the jury, which the court approved, show that she was not in fact the purchaser or holder of the certificate, that she did not pay any consideration for it, that her name was fraudulently inserted in the blank space in the assignment

of the certificate subsequent to the death of Axel Swanson, which occurred on June 30, 1919, and that her claim that she had possession of the certificate from 1916 to 1919 was untrue. There is no lack of evidence to support these findings. In view of the fraud established, together with the lack of consideration, she has no right to claim the property and her paper title must be deemed to be void. There was no invalidity in the judgment of foreclosure or the sale under it, nor in the confirmation of the sale by the court on February 19, 1916. The fraud charged and shown was perpetrated long after these steps were taken.

It is contended, however, that plaintiff failed to establish his right to the property. His right arose through the contract that his father and mother made for his benefit. The fact that he was a minor did not prevent him from receiving and owning property. (*Wheeler v. St. J. & W. Rld. Co.*, 31 Kan. 640, 3 Pac. 297.) There it was held that:

"A minor may own property, the same as any other person. He may obtain it by inheritance, by gift, or by purchase; and there is nothing in the law that would prevent even a father from giving property to his minor child."

It is said that no guardian was appointed to act for him, but his father and mother were his natural guardians, and his minority as we have seen is no bar to acquiring and owning property. He was not a purchaser at the judicial sale, but obtained the property from the owners after the sale was made. If his father and mother owned the property, they had the right to dispose of it and give it to him either by deed or through the transfer of the certificate of sale. The fact that it was done through the intermediary, Charles Carlson, the bidder, who was furnished the money to pay the amount that was bid for the property and also to pay the taxes and costs, did not make Carlson the owner. The assignment and delivery of the certificate to Swanson immediately after it was issued tended to show that he was not the owner. The testimony is abundant to show that the money was procured by Swanson and paid to Charles Carlson to pay the sale price and the charges against the property. It was sufficient, too, to show that the agreement between plaintiff's father and mother to transfer the property was actually made and completed when the assigned certificate was delivered to plaintiff's mother. The fact that the blank in the assignment was not filled out, did not operate to nullify the transfer. While the legal title to the property was in the father at the time of the foreclosure, the mother in fact was the equitable owner

Swanson v. Carlson.

of it, the father having given nothing for it except a mortgage to the mother which she canceled before the transfer was made. The delivery of the certificate to the mother, a natural guardian of plaintiff, was shown, and it also appeared that she retained it until it was surreptitiously taken from her possession. It is said that the trust was an express one, and not being in writing was void, but it appears that there was no express trust. On the contrary, it was a constructive trust, which arose through the fraud of Amalia Carlson, and while she had acquired a sheriff's deed to the property, she is deemed to be a constructive trustee, holding the property for the real owner. (*Kahm v. Klaus,* 64 Kan. 24, 67 Pac. 542.)

There is a further claim that the order of the court in the second confirmation in which she was declared to be the holder and owner of the certificate and entitled to a deed, is a bar to the relief asked. That was a superfluous order, as the sale had already been confirmed and a deed ordered to the holder of the certificate, and the issue of her fraud in obtaining it was not considered or determined on her motion. Besides, the plaintiff was not a party to the proceeding, and even if the question had been open to consideration on the motion, the plaintiff could not be bound by the order made.

There is a contention that the court erred in failing to require the repayment of taxes which Amalia Carlson had paid. These payments were voluntarily made by one who had no right or interest in the property, and because of her fraud she must be regarded as a trustee *ex maleficio.* The refusal to allow her the taxes paid was not error.

A number of objections are raised by her as to the admission of evidence and as to instructions given and refused, but we see no material error in them.

As to the claim of Ingrid Swanson, it must be held that the interest of Axel Swanson passed in the foreclosure sale. As we have seen the real ownership of the property was in Mary Reisacker. According to the testimony Swanson had no money in the property when the mortgage was foreclosed. Any contingent interest he may have had in it was foreclosed and disposed of by the sale. Under the testimony which the jury accepted there was then no interest in Swanson to pass to his wife, Ingrid Swanson. Finding no error in the proceedings, the judgment is affirmed.

HARVEY, J. (dissenting): The plaintiff does not succeed in this case by reason of being an heir of Axel Swanson, but because of a

parol agreement between Axel Swanson and the boy's mother, Mrs. Reisacker, to the effect that at the foreclosure sale the property would be bid in in such a way that the certificate of purchase could be assigned to plaintiff, and that this was done except for the fraud of Amalia Carlson. Now let us examine that a minute. Directly before the foreclosure the record title was in the name of Axel Swanson. It is said in the opinion that this is only the naked legal title, the real equitable title then being in Mrs. Reisacker. I think the opinion gives more force to that view than the record justifies, but this is not so material. At the sale in foreclosure it is conceded by plaintiff that Axel Swanson's money was furnished to buy the property. By furnishing the money for this purchase he became the equitable owner of the property, and under the statute (R. S. 22-108) his widow was entitled to one-half of it upon his death, unless it was disposed of by judicial sale. There was no judicial sale after that. Now how does he get rid of it? By a parol agreement with Mrs. Reisacker by which the certificate of purchase was to be assigned to plaintiff. It seems to me that, being the equitable owner of this property after the sale, Axel Swanson was powerless to dispose of it by such an agreement, or in any other manner, so as to deprive his widow, Ingrid Swanson, of a one-half interest in it upon his death.